UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
UNITED STATES OF AMERICA,         :

                               :

                   Plaintiff,         :          OPINION AND ORDER

                               :

      -v.-                              :          11 Civ. 6965 (GWG)

JACOB ROZBRUCH et al.,         :

                   Defendant.     :
------------------------------------------------------------------x
**GABRIEL W. GORENSTEIN, UNITED STATES MAGISTRATE JUDGE**

       Plaintiff United States of America (the "Government") filed this action to: (1) reduce to

judgment federal tax assessments made against defendants Jacob Rozbruch and Marsha

Rozbruch (the "Rozbruchs") and East 72nd Street Orthopaedic Surgery Specialists, P.C.

(collectively "defendants"); and (2) to foreclose on federal tax liens levied on property owned by

the Rozbruchs.  The Government now moves for summary judgment on both of its causes of

action.  The parties consented to having this matter decided by a United States Magistrate Judge

pursuant to 28 U.S.C. § 636(c).  For the reasons set forth below, the Government's motion for

summary judgment is granted.

I.  BACKGROUND

     A.  Procedural History

       The Government filed the complaint in this action on October 4, 2011.  See Complaint,

filed Oct. 4, 2011 (Docket # 1).  The original complaint named as defendants Jacob and Marsha

Rozbruch, 420 East 72nd Tenants Corporation ("Tenants Corporation"), Emigrant Mortgage

Company ("Emigrant"), the New York State Department of Taxation and Finance, and the New

York City Department of Finance.  See id.  The complaint stated that the Government sought to "collect certain federal tax liabilities of the defendants" and to "enforce federal tax liens upon personal property owned by the Rozbruchs, namely 564 shares of stock of [Tenants Corporation] and the proprietary lease for Unit 7J; 377 shares of stock of [Tenants Corporation] and the proprietary lease for Unit 1K; and 480 shares of stock of [Tenants Corporation] and the proprietary lease for Unit 1J, all three units being located in the building known as 420 East 72nd Street" in New York City.  Id. ¶ 1.  The complaint alleged that Tenants Corporation owns "the land and residential building" in which the three units are located and that Tenants Corporation "may have or claim to have an interest in the proceeds of any sale of the Apartments." Id. ¶ 6.  Similarly, it alleged that Emigrant "holds a mortgage on the Apartments" and that "Emigrant may have or claim to have an interest in the proceeds of any sale of the Apartments." Id. ¶ 7.  Finally, the complaint alleged that the New York State Department of Taxation and Finance and the New York City Department of Finance may also "have or claim to have an interest in the proceeds of any sale of the Apartment[s]." Id. ¶¶ 9-10.

On March 15, 2012, the Government filed an amended complaint adding East 72nd Street Orthopaedic Surgery Specialists, P.C. ("Ortho") as a defendant.  See Amended Complaint, filed March 15, 2012 (Docket # 4).  The Government later filed second and third amended complaints. See Second Amended Complaint, filed April 26, 2013 (Docket # 27); Third Amended Complaint, filed June 26, 2013 (Docket # 33).

On May 14, 2013, Tenants Corporation filed an answer to the second amended complaint, alleging that it held "a priority interest over all others, including Plaintiff, in the proceeds of any sale of the Apartments . . . to collect any past and future unpaid maintenance, as well as attorneys' fees and costs for the collection thereof . . . ."  Defendant 420 East 72nd

Tenants Corp.'s Answer to the Second Amended Complaint, filed May 14, 2013 (Docket # 28),

¶ 15.  On June 3, 2013, Emigrant filed an answer to the second amended complaint, in which it

asserted that it "has and does claim a first position mortgage lien on the Apartments . . . [and] an

interest in the proceeds of any sale of the Apartments" and that "any liens or security interests

that Plaintiff may have or claim in the Apartments is subordinate to the senior and first position

mortgage lien of Emigrant on the Apartments, as a result of two subordination agreements

executed by the Internal Revenue Service in favor of Emigrant."  Answer, Defenses,

Counterclaim and Cross-Claims of Emigrant Mortgage Company, Inc. to the Second Amended

Complaint, filed June 3, 2013 (Docket # 30), ¶ 4.

 The Government filed the instant motion for summary judgment on both of its causes of

action on February 12, 2014.[1]

 B.  Facts

 The following facts are undisputed unless otherwise stated.

 Jacob Rozbruch and Marsha Rozbruch, husband and wife, reside at 420 East 72nd Street,

Apartment 7J, in New York City.  See Answer to Third Amended Complaint by Defendants

---

[1]  See Notice of Motion, dated Feb. 12, 2014 (Docket # 43); Memorandum of Law in
Support of the Government's Motion for Summary Judgment, dated Feb. 12, 2014 (Docket # 44)
("Gov't Mem."); Declaration of Revenue Officer Carolyn J. Fields, dated Feb. 12, 2014 (Docket
# 45) ("Fields Decl."); The Government's Local Civil Rule 56.1 Statement of Material Facts,
dated Feb. 12, 2014 (Docket # 46) ("Gov't 56.1 Stat."); Rozbruch Defendants' Memorandum of
Law in Opposition to Plaintiff's Motion for Summary Judgment, dated March 13, 2014 (Docket
# 47) ("Def. Mem."); Certification of Jeremy M. Klausner in Opposition to Plaintiff's Motion for
Summary Judgment, dated March 13, 2014 (Docket # 48) ("Klausner Cert."); Rozbruch
Defendants' Response to Plaintiff's Rule 56.1 Statement of Material Facts, dated March 14,
2014 (Docket # 50) ("Def. 56.1 Stat."); Reply Memorandum of Law in Further Support of the
Government's Motion for Summary Judgment, dated April 9, 2014 (Docket # 53) ("Gov't
Reply"); Supplemental Declaration of Revenue Officer Carolyn J. Fields, dated April 9, 2014
(Docket # 54); Government's Response to the Rozbruch Defendants' Additional Material Facts
Not in Dispute, dated April 9, 2014 (Docket # 55) ("Gov't Supp. 56.1 Stat.").

Jacob Rozbruch, Marsha Rozbruch, and East 72nd Street Orthopaedic Surgery Specialists, filed

May 5, 2013 (Docket # 34) ("Answer"), ¶ 5.  Ortho is a New York professional corporation with

offices located at 420 East 72nd Street, Units 1J and 1K.  Id. ¶ 6; Def. 56.1 Stat. ¶ 6.[2]  The

Rozbruchs are the sole shareholders of 564 shares of stock in Tenants Corporation and the

holders of the proprietary lease for Unit 7J.  See Proprietary Lease for Unit 7J (annexed as Ex. 8

to Fields Decl.); Def. 56.1 Stat. ¶ 1; Fields Decl. ¶ 130.  Jacob Rozbruch is the sole shareholder

of 480 shares of stock of the Tenants Corporation and the holder of the proprietary lease for Unit

1J.  See Proprietary Lease for Unit 1J (annexed as Ex. 9 to Fields Decl.); Def. 56.1 Stat. ¶ 2;

Fields Decl. ¶ 131.  Jacob Rozbruch is also the sole shareholder of 377 shares of stock of the

Tenants Corporation and the holder of the proprietary lease for Unit 1K.  See Proprietary Lease

for Unit 1K (annexed as Ex. 10 to Fields Decl.); Def. 56.1 Stat. ¶ 3; Fields Decl. ¶ 132.

    The Internal Revenue Service ("IRS") made assessments jointly against the Rozbruchs

for deficiencies in the payment of federal income tax for the taxable years 1999 to 2011.  See

Fields Decl. ¶¶ 5-19; Account Transcripts (annexed as Ex. 1 to Fields Decl.); Def. 56.1 Stat. ¶ 7.[3]

The deficiency assessments as to the Rozbruchs' federal income taxes for the 1999-2011 tax

years are based on income reported by the Rozbruchs.  Fields Decl. ¶ 20; Def. 56.1 Stat. ¶ 8.

The Government asserts that the amount of the deficiency assessments against the Rozbruchs for

the payment of federal income taxes for these years, including accrued statutory penalties and

interest as of February 12, 2014, is $3,354,840.34.  Gov't 56.1 Stat. ¶ 64; Fields Decl. ¶ 125;

---

[2] Defendants assert that Ortho "ceased operations on or about December 31, 2013."  Def. 56.1 Stat. ¶ 74.  The Government denies this assertion.  Gov't Supp. 56.1 Stat. ¶ 74.

[3] Revenue Officer Fields avers that these assessments were made "jointly and severally" against the Rozbruchs, Fields Decl. ¶ 5, while the Government's other submissions assert that the assessments were made "jointly" against the Rozbruchs, Gov't 56.1 Stat. ¶ 7.

Payoff Calculator (annexed as Ex. 6 to Fields Decl.), at 1.  Defendants have contested these assessments only on the ground that the collections period for the 1999 tax year has expired.  See Def. 56.1 Stat. ¶ 9.  While the IRS has issued notices of assessment and demands for payment, the Rozbruchs have failed to pay the total amount of their federal income tax liabilities for these years.  Fields Decl. ¶ 20; Def. 56.1 Stat. ¶ 10.

The IRS assessed trust fund recovery penalties ("TFRP's") under 26 U.S.C. § 6672 against the Rozbruchs as "responsible persons" who each failed to withhold, account for, and pay over to the IRS income and FICA taxes relating to compensation paid to employees of Ortho for various tax quarters from 2000 to 2009.  See Fields Decl. ¶¶ 21- 38; Account Transcripts (annexed as Ex. 2 to Fields Decl.); Def. 56.1 Stat. ¶ 11.  The Government asserts that the amount of the TFRP assessments with respect to Jacob Rozbruch, including statutory interest and fees as of February 12, 2014, is $466,292.43.  Gov't 56.1 Stat. ¶ 65; Fields Decl. ¶ 126; Payoff Calculator (annexed as Ex. 6 to Fields Decl.), at 2.  The Government asserts that the amount of the TFRP assessments with respect to Marsha Rozbruch, including statutory interest and fees as of February 12, 2014, is $466,569.48.  Gov't 56.1 Stat. ¶ 66; Fields Decl. ¶ 127; Payoff Calculator (annexed as Ex. 6 to Fields Decl.), at 3.  With respect to these assessments, Defendants admit that the notices of assessment and demands for payment of these amounts were issued to the Rozbruchs.  Def. 56.1 Stat. ¶ 13.  They add, however, that the "purported assessments for the Second Quarter 2003 and Third Quarter 2003 are invalid as they were not made within the time prescribed by statute" and that the "account balances set forth in Plaintiff's Rule 56.1 Statement [at ¶ 12] are calculated incorrectly as interest is calculated from the date that notice of assessment and demand for payment is issued, not from the date of assessment."  Id. ¶ 12.  Notices of assessments and demand for payments were issued to the Rozbruchs, but the

Rozbruchs have failed to pay the full amount of these liabilities.  Fields Decl. ¶ 39.[4]

The IRS also made assessments against Ortho for deficiencies in the payment of quarterly federal payroll, unemployment, and corporate income taxes for various tax quarters and tax years from 2000 through 2012.  See Fields Decl. ¶¶ 40-76; Account Transcripts (annexed as Ex. 3 to Fields Decl.); Def. 56.1 Stat. ¶ 14.  The Government asserts that the amount of the deficiency assessments against Ortho for these taxes, including penalties and interest as of February 12, 2014, is $1,519,925.05.  Gov't 56.1 Stat. ¶ 71; Fields Decl. ¶ 129; Payoff Calculators (annexed as Ex. 7 to Fields Decl.), at 1-3.  Notices of assessments and demand for payment of these taxes were issued to Ortho, but Ortho has failed to pay the full amount of these liabilities.  Fields Decl. ¶ 75.[5]

Finally, we note that the Government asserts that it has timely recorded a number of Notices of Federal Tax Lien relating to the assessments described above against the Rozbruchs and against Ortho.  See Gov't 56.1 Stat. ¶¶ 17-63.  We do not discuss this issue further, however, because the parties have not asked the Court to adjudicate any lien priority issues that may exist as between the Government, Tenants Corporation, and Emigrant.  See Gov't Mem. at 9 n.13.

---

[4]  In response to this assertion, defendants state the following: "Denied, except admitted that notices of assessments and demand for payment were issued to the Rozbruchs."  Def. 56.1 Stat. ¶ 13.  Because defendants cite to no evidence in support of this denial, however, the Government's assertion regarding the failure to pay is deemed admitted pursuant to Local Civil Rule 56.1.  See, e.g., Lorterdan Props. at Ramapo I, LLC v. Watchtower Bible and Tract Soc'y of N.Y., Inc., 2012 WL 2873648, at *1, n.1 (S.D.N.Y. July 10, 2012) (assertions in Rule 56.1 statement deemed admitted where Rule 56.1 counterstatement failed to cite to admissible evidence) (collecting cases).

[5]  Defendants deny this assertion except for the "Third Quarter 2008, Fourth Quarter 2008, and Fourth Quarter 2012."  Def. 56.1 Stat. ¶ 16.  Once again, because defendants cite to no evidence in support of this denial, the Government's assertion regarding the failure to pay is deemed admitted.  See footnote 4.

## II.  LAW APPLICABLE TO MOTIONS FOR SUMMARY JUDGMENT

Rule 56(a) of the Federal Rules of Civil Procedure states that summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

In determining whether a genuine issue of material fact exists, "[t]he evidence of the non-movant is to be believed" and the court must draw "all justifiable inferences" in favor of the nonmoving party.  Id. at 255 (citing Adickes v. S.H. Kress & Co., 398 U.S. 144, 158–59 (1970)). Nevertheless, once the moving party has shown that there is no genuine issue as to any material fact and that it is entitled to a judgment as a matter of law, "the nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial,'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (emphasis in original) (citation omitted) (quoting Fed. R. Civ. P. 56(e)), and "may not rely on conclusory allegations or unsubstantiated speculation," Scotto v. Almenas, 143 F.3d 105, 114 (2d Cir. 1998) (citations omitted).  In other words, the nonmovant must offer "concrete evidence from which a reasonable juror could return a verdict in his favor," Anderson, 477 U.S. at 256, and "[a] party opposing summary judgment does not show the existence of a genuine issue of fact to be tried merely by making assertions that are conclusory," Major League Baseball Prop., Inc. v. Salvino, Inc., 542 F.3d 290, 310 (2d Cir. 2008) (citation omitted).  "Where it is clear that no rational finder of fact "could find in favor of the nonmoving party because the evidence to support its case is so slight, summary judgment should be granted."  FDIC v. Great Am. Ins. Co., 607 F.3d 288, 292 (2d Cir. 2010) (quoting Gallo v. Prudential Residential Servs., Ltd. P'ship, 22 F.3d 1219, 1224 (2d Cir.

1994) (internal quotation marks omitted)).

III.  DISCUSSION

We next address the two issues on which the Government has sought summary judgment: (1) its entitlement to a judgment against defendants for the various tax assessments, penalties, and interest; and (2) its entitlement to foreclose on the federal tax liens levied on property owned by the Rozbruchs.

A.  Reducing the Tax Assessments to a Judgment

"The district courts of the United States at the instance of the United States shall have such jurisdiction . . . to render such judgments and decrees as may be necessary or appropriate for the enforcement of the internal revenue laws."  26 U.S.C. § 7402(a).  Thus, "[i]f a taxpayer is liable to the IRS, the Government may proceed in district court to obtain a judgment for the amount assessed against the taxpayer."  United States v. Sweeny, 418 F. Supp. 2d 492, 496 (S.D.N.Y. 2006) (citing 26 U.S.C. § 7402(a)).  "It is well established that the IRS's tax calculations (including calculations of interest and penalties) are presumptively valid and create a prima facie case of liability, such that the Government is 'entitled to have the assessment reduced to judgment unless the taxpayer overcomes the presumption by the IRS that the assessment is correct.'"  United States v. Chrein, 368 F. Supp. 2d 278, 282 (S.D.N.Y. 2005) (quoting Chariot Plastics, Inc. v. United States, 28 F. Supp. 2d 874, 881 (S.D.N.Y. 1998) (citing cases)).[6]  "[T]he burden is on the taxpayer to prove [an assessment's] invalidity."  Pizzarello v. United States, 408 F. 2d 579, 583 (2d Cir. 1969) (citations omitted); accord Sweeny, 418 F.

---

[6]  An "assessment" is "essentially a bookkeeping notation" that is "made when the Secretary or his delegate establishes an account against the taxpayer on the tax rolls."  Laing v. United States, 423 U.S. 161, 170 n.13 (1976).

Supp. 2d at 496.  Additionally, "[t]o defeat a motion for summary judgment, the taxpayer must

not only show that the assessment is incorrect, but it must also prove the correct amount of the

tax."  Chariot Plastics, 28 F. Supp. 2d at 882 (citing United States v. Janis, 428 U.S. 433, 440-41

(1976) (additional citation omitted)).

      In this case, defendants argue that the tax assessments at issue are incorrect for several

reasons.  We consider each argument in turn.

      1.  <u>IRS Compliance with Statutory Condition Precedent to TFRP Assessments</u>

      26 U.S.C. § 6672(a), which governs the imposition of TFRP's, provides that

> [a]ny person required to collect, truthfully account for, and pay over any tax
> imposed by this title who willfully fails to collect such tax, or truthfully account
> for and pay over such tax, or willfully attempts in any manner to evade or defeat
> any such tax or the payment thereof, shall, in addition to other penalties provided
> by law, be liable to a penalty equal to the total amount of the tax evaded, or not
> collected, or not accounted for and paid over.

As the Second Circuit has explained, the Internal Revenue Code "requires employers to withhold

income and FICA taxes from the wages of their employees."  Winter v. United States, 196 F.3d

339, 344 (2d Cir. 1999) (citing 26 U.S.C. §§ 3102(a) (FICA taxes) and 3402 (income taxes)).

The Code also "requires employers to remit these withholding taxes to the IRS" on a quarterly

basis.  Id. (citing 26 U.S.C. § 7501(a)).[7]  However, "[i]f an employer withholds taxes from its

employees' wages, but does not remit those taxes to the IRS, the government credits the

---

[7]  26 U.S.C. § 7501(a) provides:

> Whenever any person is required to collect or withhold any internal revenue tax
> from any other person and to pay over such tax to the United States, the amount
> of tax so collected or withheld shall be held to be a special fund in trust for the
> United States.  The amount of such fund shall be assessed, collected, and paid in
> the same manner and subject to the same provisions and limitations (including
> penalties) as are applicable with respect to the taxes from which such fund arose.

employees with having paid their taxes and may not seek to collect the unremitted taxes from them." Id. (citations omitted). "Instead, to protect the government from losses sustained by an employer's failure to remit withholding taxes, section 6672 of the Code allows the IRS to shift liability for the unremitted taxes from the employer to each individual responsible for the failure to remit." Id. Accordingly, "under section 6672(a), an individual may be held liable for unpaid withholding taxes if: (1) he or she was a 'responsible person' for collection and payment of the employer's taxes; and (2) he or she 'willfully' failed to comply with section 7501(a)." Id. (citation omitted); accord Hochstein v. United States, 900 F.2d 543, 546 (2d Cir. 1990). "The individual against whom the assessment is made [under § 6672] bears the burden of proving by a preponderance of the evidence one or both of these elements is not present." Hochstein, 900 F.2d at 546 (citations omitted).

Defendants concede that the Rozbruchs were "responsible persons" for Ortho and that Ortho "failed to pay over to the IRS the entire amount of taxes it withheld from its employees' salaries for the periods at issue." Def. Mem. at 4. As to the element of willfulness, they have provided no evidence at all and therefore cannot meet their burden of showing an absence of willfulness. They argue, however, that the Government has failed to satisfy a statutory prerequisite, contained in 26 U.S.C. § 6751(b)(1), for the assessment of the TFRP's. See Def. Mem. at 3-5.

Section 6751(b)(1) provides that "[n]o penalty under this title shall be assessed unless the initial determination of such assessment is personally approved (in writing) by the immediate supervisor of the individual making such determination or such higher level official as the Secretary may designate." Defendants contend that a TFRP is "defined" as a "penalty" by § 6672, and that because the Government has not shown that it complied with § 6751(b)(1), the

Government "has failed to demonstrate one of the elements of its claim." Def. Mem. at 4-5. In response, the Government asserts that "[d]espite its name, a TFRP is not a 'penalty' that triggers the application of section 6751(b)(1)." Gov't Reply at 3. Instead, because § 6672(a) "allows the IRS to shift liability for the unremitted taxes from the employer to each individual responsible for the failure to admit," the TFRP is "in essence . . . a tax liability." Id. Although not cited by the Government, a different statutory provision seems to more clearly mandate this result. 26 U.S.C. § 6671(a) provides that "[t]he penalties and liabilities provided by this subchapter shall be paid upon notice and demand by the Secretary, and shall be assessed and collected in the same manner as taxes" (emphasis added).

In any event, case law supports the Government's position. In Kelly v. Lethert, 362 F.2d 629 (8th Cir. 1966), the Eighth Circuit held, in the context of construing 26 U.S.C. § 7421(a), that "[a]lthough Section 6672 denominates this liability as a 'penalty' it is well settled that it is, in substance, a tax." 362 F.2d at 633. Courts in this Circuit have also concluded that a TFRP assessment under § 6672 is to be treated as a "tax" and not a "penalty" under the Code. See, e.g., United States v. Rem, 1992 WL 204369, at *2 (S.D.N.Y. Aug. 4, 1992) ("The 100% assessment [under § 6672], although defined as a penalty is really a device employed by the IRS to recoup unpaid employment taxes."), vacated on other grounds, 38 F.3d 634 (2d Cir. 1994); Turchon v. United States, 77 B.R. 398, 400 (E.D.N.Y. 1987) ("Although the liability set forth in [§ 6672] is denominated a penalty, it is in fact a tax.") (citing Kelly, 362 F.2d at 633) (additional citation omitted); see also United States v. Becker, 1989 WL 34048, at *4 (S.D.N.Y. April 4, 1989) (referring to assessments under § 6672 as "taxes"). We therefore reject defendants' argument that the use of the term "penalty" in 26 U.S.C. § 6672 triggers the approval requirement of § 6751(b)(1).

Defendants attach as an exhibit to their opposition papers an unreported order of the United States Tax Court remanding a case to the IRS Office of Appeals, along with a later IRS notice of determination in that case abating the taxpayer's civil penalty imposed under 26 U.S.C. § 6702(a) on the ground that the necessary "written managerial approval was not secured" under 26 U.S.C. § 6751(b)(1).  See Order and Supplemental Notice of Determination (annexed as Ex. A to Klausner Cert.), at 1, 3.  Defendants argue that these materials show that "there is no question that the IRS recognizes the applicability of [26 U.S.C.] § 6751(b) in similar situations." Def. Mem. at 4-5.  But these materials are irrelevant for the simple reason that they do not concern a TFRP assessment under 26 U.S.C. § 6672.  Instead they deal with the propriety of a $5,000 civil penalty under 26 U.S.C. § 6702(a) for the filing of a frivolous tax return.

Defendants also attach a report from the Treasury Inspector General for Tax Administration.  See Report of Treasury Inspector General for Tax Administration, dated Sept. 9, 2013 (annexed as Ex. B to Klausner Cert)  Without providing a citation to any particular statement in this 35-page document, defendants assert that the Inspector General "has found that managers did not properly approve paid preparer penalties pursuant to [26 U.S.C.] § 6751(b)." Def. Mem. at 5.  This document, however, does nothing to advance the contention that a TFRP assessment under § 6672 is a "penalty" triggering the operation of § 6751's approval requirement.

In sum, we reject defendants' arguments that the Government failed to comply with a statutory condition precedent for the assessment of the TFRP's under 26 U.S.C. § 6672.

### 2.  Timeliness of Certain TFRP Assessments

Defendants argue that "[i]n the event this Court does grant summary judgment on the TFRP liability, it should not reduce to judgment the liabilities for the second and third quarters

12

of 2003."  Def. Mem. at 7.  Defendants contend that under the Internal Revenue Code, "the

general rule is that assessments for tax liabilities must be made within three years after the date

the return was filed," but that "[b]oth of these periods were assessed more than three years" after

the date on which the returns for these periods were deemed filed.  Id.  Defendants cite to 26

U.S.C. § 6501, which provides, in relevant part, that "the amount of any tax imposed by this title

shall be assessed within 3 years after the return was filed."  Id. § 6501(a).  While Ortho's

quarterly employment tax return for the second quarter of 2003 was filed on December 15, 2003,

and its return for the third quarter of 2003 was filed on January 5, 2004, defendants concede that

by operation of law, "both [of] these returns are deemed filed on April 15, 2004."  Def. Mem. at

7; see 26 U.S.C. § 6501(b)(1) ("[A] return of tax imposed by this title . . . filed before the last

day prescribed by law or by regulations promulgated pursuant to law for the filing thereof, shall

be considered as filed on such last day.").  They argue, however, that the Government "has failed

to allege or demonstrate compliance with the statutory prerequisites for assessment of the

penalty" and that it is "uncontested that the initial TFRP assessments made against the

Rozbruchs for these two quarters was on December 17, 2007."  Def. Mem. at 7.  In addition to

articulating an explanation as to why the assessments were timely filed, see Gov't Reply at 6-7,

the Government contends that defendants' assertion of the three-year statutory expiration period

under § 6501 constitutes a "statute of limitations defense" which defendants have waived by

failing to raise it in their answer to the third amended complaint, see id. at 6.

   "A claim that a statute of limitations bars a suit is an affirmative defense, and, as such, it

is waived if not raised in the answer to the complaint."  Litton Indus., Inc. v. Lehman Bros. Kuhn

Loeb Inc., 967 F.2d 742, 751-52 (2d Cir. 1992) (citing Fed. Riv. Civ. P. 8(c)).  The three-year

limitations period under 26 U.S.C. § 6501(a) constitutes a "statute of limitations" defense.  See,

e.g., United States v. Landau, 155 F.3d 93, 107 (2d Cir. 1998) (treating the three-year period

under § 6501(a) as a "statute of limitations defense"); accord United States v. Gurley, 415 F.2d

144, 147 (5th Cir. 1969).  The failure to raise such a defense in an answer results in its waiver.

See United States v. Gray, 2013 WL 2470303, at *6 (E.D.N.Y. June 7, 2013) ("[Defendant] did

not raise the statute of limitations defense [under § 6501] in his answer to the complaint. . . .

Instead, he raised it for the first time in his motion for summary judgment.  Accordingly, the

statute of limitations defense is waived . . . .").  Here, defendants did not raise the statute of

limitations defense in any of their answers.  See generally Answer to Amended Complaint by

Defendants Jacob Rozbruch, Marsha Rozbruch, and East 72nd Street Orthopaedic Surgery

Specialists, filed April 4, 2012 (Docket # 6); Answer to Third Amended Complaint by

Defendants Jacob Rozbruch, Marsha Rozbruch, and East 72nd Street Orthopaedic Surgery

Specialists, filed Aug. 5, 2013 (Docket # 34).[8]  Accordingly, we conclude that defendants have

waived any § 6501(a) defense to the TFRP assessments for the second and third quarters of

2003, and we reject their argument that judgment should not be entered on the TFRP

assessments for these periods.[9]

### 3.  Interest Accrual Dates for TFRP Assessments

Defendants argue that the IRS incorrectly calculated interest on the TFRP assessments

and that, as a result, "[c]ertain portions of the interest claimed by Plaintiff" are "not due as a

---

[8]  Defendants did not file an answer to the Government's second amended complaint.

[9]  This ruling should not be construed as expressing an opinion on whether defendants could now assert the defense if they moved to amend their answer to include it.  It appears that any such motion, however, would be futile in light of the Government's unrebutted explanation as to why the assessments were in fact timely.  See Gov't Reply at 6-7.  If it is to be made, any motion to amend must be filed within 7 days and include an explanation that addresses in full the Government's argument.

matter of law."  Def. Mem. at 8.   They contest the interest calculations on the TFRP assessments

as to all relevant periods except for all four quarters of 2008 and for the first quarter of 2009.

See Def. 56.1 Stat. ¶ 77; Def. Mem. at 8.  They do not quarrel with the Government's position

that interest runs from the date of any "notice and demand" letters for the TFRP assessments, as

provided in 26 U.S.C. § 6601(e)(2).   Rather, they assert that the Government got the dates of the

notice and demand letters wrong.  Compare Def. 56.1 Stat. ¶ 77 with Fields Decl. ¶ 38; see Def.

Mem. at 8 ("Plaintiff has calculated interest on the Rozbruchs['] purported TFRP liabilities from

the date of assessment rather than the date the notice and demand was sent.").

     For its part, the Government responds that the IRS issued notice and demand letters

under § 6303(a) for one set of TFRP liabilities on March 23, 2004, and for another set of

liabilities on December 17, 2007, and that the dates of these letters "correspond with the actual

assessment dates for these liabilities."  Gov't Reply at 10.  According to the Government,

defendants "mistakenly confuse[] the dates that the IRS sent the Rozbruchs notices of intent to

levy on their property under 26 U.S.C. § 6330(a)" to satisfy the TFRP liabilities "with the dates

of the IRS's 'notice and demand' letters to pay the underlying TFRP liabilities under § 6303(a)."

Id. at 10-11 n.2 (citing Def. 56.1 Stat. ¶ 77).

     In support of its argument, the Government points to a supplemental declaration from

Revenue Officer Fields explaining the dates on which the TFRP assessments were made as well

as the dates on which notice and demand letters for these assessments were sent to defendants.

See Supplemental Declaration of Revenue Officer Carolyn J. Fields, dated April 9, 2014

(annexed to Gov't Reply Mem.).  In her supplemental declaration, Fields states that she has

"queried the IRS 'Integrated Data Retrieval System'" to determine that "for the 4th quarter of

2000, the 1st quarter of 2002, the 2nd quarter of 2002, the 3rd quarter of 2002, the 4th quarter of

2002, and the 1st quarter of 2003, notice and demand letters were sent on March 23, 2004, which was the assessment date for the TFRP liabilities for those quarters." Id. ¶¶ 35-36.  Similarly, Fields states that "[f]or the 2nd and 3rd quarters of 2003, the 4th quarter of 2004, and the 3rd and 4th quarters of 2005, notice and demand letters were sent on December 17, 2007, which was the assessment date for the TFRP liabilities for those quarters."  Id. ¶ 36.

By contrast, defendants have submitted no admissible evidence on this point.  Instead, they have submitted an affidavit from an attorney stating without explanation that the applicable dates are those set forth in defendants' statement of material facts, along with interest calculations based on those dates.  See Klausner Cert. ¶ 5; Def. 56.1 Stat. ¶ 77.  What is missing is any affidavit or testimony from an individual with knowledge — either based on personal knowledge of the mailing or personal knowledge of what the IRS computer database reflects — of the dates on which the IRS sent the notice and demand letters.  See Fed. R. Civ. P. 56(c)(4). Accordingly, no reasonable jury could conclude that the notice and demand letters were sent on that date that defendants' attorney asserts.  Therefore, defendants' opposition to the Government's motion for summary judgment in this respect is rejected.

### 4.  Alleged Expiration of Certain Collections Periods

Defendants also argue that the collections periods for several tax assessments at issue have expired and that the Government's collection suit is therefore untimely with respect to these assessments.  See Def. Mem. at 6-7.  Specifically, defendants assert that the Government's lawsuit is untimely as to (1) the Rozbruchs' 1999 personal income tax assessment and (2) the payroll tax assessments against Ortho for the fourth quarter of 2000, for the first quarter of 2002, and for the second quarter of 2002.  See id. at 6.

16

Under 26 U.S.C. § 6502(a)(1), a timely assessed tax "may be collected . . . by a proceeding in court . . . within 10 years after the assessment of the tax."  The Government offers an explanation as to why the suit is in fact timely but maintains that this limitations defense was waived in any event because defendants failed to raise it in their answer to the third amended complaint.  See Gov't Reply at 8.  As was true for the limitations defense discussed in section III.A.2 above, we agree that the defense was waived because it was not raised in defendants' answer.  See, e.g., Simmons Perrine Moyer Bergman PLC v. Coleman, 2013 WL 1562972, at *6 (N.D. Iowa April 15, 2013) ("Because the [defendants] failed to include their [§ 6502] defense in their Answer, the court finds that the [defendants] waived it.").[10]

*     *     *

In sum, defendants have failed to overcome the presumption of validity underlying the tax assessments at issue in this case.  The Court thus grants the Government's motion for summary judgment reducing to judgment defendants' tax liabilities.  At the time a final judgment is entered, the Government will be directed to submit, on notice to defendants, a proposed judgment that includes a calculation of interest as of 10 days after the date of the submission of the proposed judgment.  If defendants have any objections to calculations in the proposed judgment, they may be filed two business days after the Government makes its submission.

### B. Tax Lien Foreclosure

The Government also seeks to foreclose on tax liens it has levied on property owned by the Rozbruchs.  Defendants do not contest this claim for relief in their opposition papers.  Thus,

---

[10] Defendants have leave to make a motion to amend as provided in footnote 9 above if they are able to counter the Government's arguments on this point.  See Gov't Reply at 8-10.

we treat this branch of the Government's summary judgment motion as unopposed.  The Second

Circuit has made clear that where the nonmoving party fails to respond to a motion for summary

judgment, the district court still must determine whether summary judgment is warranted.  See,

e.g., Vt. Teddy Bear Co., Inc. v. 1-800 Beargram Co., 373 F.3d 241, 244 (2d Cir. 2004).  Thus,

an unopposed motion for summary judgment may be granted "only if the facts as to which there

is no genuine dispute show that the moving party is entitled to judgment as a matter of law."

Champion v. Artuz, 76 F.3d 483, 486 (2d Cir. 1996) (citation and internal quotation marks

omitted).  This principle applies equally where a motion for summary judgment is only partially

unopposed.  See generally Fabrikant v. French, 691 F.3d 193, 215 n.18 (2d Cir. 2012).

     The Government seeks a judgment decreeing that: (1) the tax liens against the Rozbruchs,

both jointly and individually, attach to Unit 7J; (2) the tax liens that include Jacob Rozbruch

attach to Units 1J and 1K; and (3) the tax liens shall be foreclosed by a sale of the units, upon

post-judgment motion for an order of sale to be filed with the United States.  Gov't Mem. at 16.

The Internal Revenue Code provides that if "any person liable to pay any tax neglects or refuses

to pay the same after demand, the amount (including any interest . . . or assessable

penalty) . . . shall be a lien in favor of the United States upon all property and rights to property,

whether real or personal, belonging to such person."  26 U.S.C. § 6321; accord United States v.

Moswkowitz, Passman & Edelman, 603 F.3d 162, 165 (2d Cir. 2010) ("When an

individual . . . fails to pay . . . taxes after a demand from the IRS, a statutory lien in the amount

of the deficiency arises on all property and rights to property, whether real or personal,

belonging to that person.") (citing 26 U.S.C. § 6321) (internal quotation marks omitted);

Sweeny, 418 F. Supp. 2d at 497 ("Section 6321 of the Internal Revenue Code provides that if a

person neglects or refuses to pay any federal tax, a lien arises automatically in favor of the

18

United States against all property rights belonging to such person."). "The statutory language 'all property and rights to property' appearing in § 6321 . . . is broad and reveals on its face that Congress meant to reach every interest in property a taxpayer might have." United States v. Nat'l Bank of Commerce, 472 U.S. 713, 719-720 (1985); accord United States v. Craft, 535 U.S. 274, 283 (2002).

A lien under § 6321 "shall arise at the time the assessment is made and shall continue until the liability for the amount so assessed (or a judgment against the taxpayer arising out of such liability) is satisfied or becomes unenforceable by reason of lapse of time." 26 U.S.C. § 6322. While a federal tax lien is "not self-executing." Nat'l Bank of Commerce, 472 U.S. at 720, 26 U.S.C. § 7403 authorizes the Government to bring a lien-foreclosure suit to collect unpaid income taxes. That provision provides, in pertinent part, that

> [i]n any case where there has been a refusal or neglect to pay any tax . . . the Attorney General or his delegate . . . may direct a civil action to be filed in a district court of the United States to enforce the lien of the United States . . . with respect to such tax or liability or to subject any property, of whatever nature, of the delinquent . . . to the payment of such tax or liability.

26 U.S.C. § 7403(a); accord United States v. Rodgers, 461 U.S. 677, 680, 682 (1983) (the Government may exercise the "usual rights of a judgment creditor" or may use § 7403 to obtain "the judicial sale of certain properties to satisfy the tax indebtedness of delinquent taxpayers").

"State law controls whether a taxpayer has an interest in property to which a lien may attach." United States v. Comparato, 22 F.3d 455, 457 (2d Cir. 1994) (citing Aquilino v. United States, 363 U.S. 509, 512-13 (1960) ("[I]t has long been the rule that in the application of a federal revenue act, state law controls in determining the nature of the legal interest which the taxpayer had in the property . . . sought to be reached by the statute.") (citation and internal quotation marks omitted)). In this case, it is undisputed that the Rozbruchs hold shares of stock

in the Tenants Corporation along with proprietary leases for Units 1J, 1K, and 7J.  See Gov't 56.1 Stat. ¶¶ 1-3; Def. 56.1 Stat. ¶¶ 1-3.  Under New York law, these interests constitute "property" or "rights to property."  See State Tax Comm'n v. Shor, 43 N.Y.2d 151, 154 (1977) (concluding that an "ownership interest of a tenant-shareholder in a co-operative apartment" exhibits elements of both real and personal property); see also Dewees Mellor, Inc. v. Weise, 1993 WL 591608, at *5 (E.D.N.Y. Dec. 29, 1993) ("Shor explicitly recognized that [a] tenant's interest in a cooperative apartment is a unique hybrid of an interest in realty and personal property, and is for many purposes treated as an interest in real property.").  Additionally, there is no dispute that liens exist by operation of 26 U.S.C. § 6321 inasmuch as defendants have not argued that they have paid any of the assessments in question.  While they have purported to deny some assertions made by the Government pertaining to their failure to pay, see Def. 56.1 Stat. ¶¶ 13, 16, defendants offer no admissible proof that they have paid any portion of the assessments at issue.

Accordingly, the Government's motion for summary judgment on the lien foreclosure issue is granted.  The Court will schedule a conference to determine whether there remains any dispute concerning lien priority over the Rozbruchs' property.

IV.  CONCLUSION

For the reasons stated above, the Government's motion for summary judgment (Docket # 43) is granted.

SO ORDERED.

Dated:  New York, New York
        July 7, 2014

_____
GABRIEL W. GORENSTEIN
United States Magistrate Judge